Good morning, Your Honors. May it please the Court, Robert Harris on behalf of the appellant Taco Bell. The central issue in this case is whether the District Court was in error in finding there were no material issues of genuine fact with respect to Chiat Day, Taco Bell's advertising agency's fault, negligence, and breach of the agency agreement in using a company wrenches, Psycho Chihuahua, in Taco Bell's advertising. We would submit to the Court what I will argue today is that the District Court summary judgment should be reversed because there was substantial and is substantial evidence in the record as to Chiat Day's fault, negligence, and breach of the agency agreement as well as, in an independent reason, the application of the doctrine of collateral estoppel, which in our view raises at least a mixed issue of fact and law that would preclude Chiat Day from contesting its failure to independently create the Chihuahua character. What was the substantial evidence that the District Court ignored? If I could quickly go through it for Your Honors. One, Chiat Day received a box of wrench materials in June of 1997. The wrench materials contained a figurine of a little dog on a skateboard. It contained a poster. But hadn't Taco Bell designed its Chihuahua before it got that material? That's a good question, Your Honor. And the answer is no. There are actually a couple answers to that question. One is that the wrench jury which decided this case was asked whether Chiat Day had independently created the character used in Taco Bell's ads. Character is defined and was defined by the federal court judge in Michigan as being ideas, concepts, and images. Not just an original concept of a Chihuahua, but the instantiation of that, those ideas, concepts, and images based upon an identifiable psycho-Chihuahua character. The liability that arose in the wrench, it was a $30 million liability, was for the use of those ideas, concepts, and images in a two-and-a-half-year ad campaign. And the jury in wrench, just like the jury here, Your Honor, should be able to look at what is a Chihuahua, what are the ideas that wrench had, some in figurines, some on storyboards, some elsewhere, and the ads that were created by Chiat Day. And Chiat Day contended that it created those ads alone. So at the very least, it seems to me that that is circumstantial evidence with respect to Chiat Day having access to the wrench ideas, concepts, and images, and using those ideas, concepts, and images in a two-and-a-half-year ad campaign. I misstated that question. It was TBWA that I think the evidence showed had done its drawings of the Chihuahua, and it did those drawings before it got the box of materials from wrench that had all the drawings. That's not what the jury in wrench was asked. They were asked whether they independently created the character. Not by June 2nd. The record, though, does suggest, Your Honor is correct in this sense, it's not drawings per se. The record does reflect that the two creative directors of Chiat Day claimed to have come up with an idea of a Chihuahua walking down the street, a boy and girl Chihuahua dog, prior to June 2nd. The jury rejected that in wrench. The jury didn't believe that argument in the wrench case. And one of the reasons why the jury didn't believe that argument, which is evidence we've also put forward in this case, is because the notebooks of the two creative directors of Chiat Day, Mr. Bennett and Mr. Williams, had page after page, hundreds, thousands of pages, I think, there were 2,000 pages, with respect to a lot of ideas for different advertising campaigns, for talking about Chihuahua. There was, I believe, one or two mentions of the word Chihuahua. So it wasn't like there were a lot of drawings. There was very little done by June 2nd. 49 of the 50 ads came after that date. I think all 50 of the ads were published after that date. And that was part of the circumstantial evidence, which led the jury in wrench, who could lead a jury in our case, to disbelieve that they had independently come up with a character, even as of June 2nd. Because the jury didn't believe that. We have other evidence with respect to the breach of the agreement. It was Chiat Day's obligation to use its best judgment to avoid having its client, Taco Bell, sued. This was an advertising agency that was paid a million dollars a month to come up with an advertising campaign. They agreed to indemnify Taco Bell, and they agreed to use their best judgment to avoid lawsuits. Not only when the box came over to Chiat Day, but also when the box came over to Chiat Day. In June of 1997, not only did they violate their own policy by opening the box, they commented on it, they displayed the items in their office, and they either lost or destroyed the contents. So that when the wrench jury heard all of that testimony, that was compelling evidence as to, for lack of a better word, their having stolen the ideas. Would you comment on the evidence that wrench, I'm sorry, I call them T-B-W-A. Chiat Day, it was formerly T-B-W-A doing business as Chiat Day. Why don't we just call them T-B? Okay, anyway, they get ready to go forward with this ad, with this Chihuahua ad and all of that business, and they get Taco Bell's approval to go forward with it. Taco Bell had had a lot of contact with the wrench people. It's an excellent question. I'm glad you asked it, because I'd like to address it. There's no question that Ed Alfaro, Taco Bell's a big company, obviously, and they've got a lot of employees, and Ed Alfaro was at a trade show in New York in 1996. He met these fellas, Rinks and Shields, from wrench. He liked the idea of licensing this psycho Chihuahua with his big bulging eye on T-shirts and elsewhere. And for about a year he met with the folks at wrench. He talked to them. He never entered into an express agreement with them. He never got any senior person at Taco Bell's approval with respect to going forward with them. But there was contact that Alfaro had with wrench. Did he ever tell... Yeah, he did. He did. Because in June, when the box went over from a fellow named Chris Miller at Taco Bell to Chiat, Chiat Day had knowledge. And the reason the box went over, here's really the crux of this. The reason the box went over was because Alfaro was still trying to get licensing opportunities. And this is all evidence that came in in the wrench case. And the bottom line in this case, Your Honors, is this is a summary judgment ruling. This is a de novo review by the court. And Judge Schiavelli, who must have been troubled by this case because it sat on his desk for two years before he issued an opinion... Well, I think there are a lot of factual issues here. Maybe he wasn't. I can't read his mind. But the genuine issue of fact dispute is that there were a lot of complicating facts that existed with respect to establishing whether or not Chiat Day was fully responsible to indemnify Taco Bell, partially responsible. And Judge Schiavelli, I believe incorrectly, concluded that Chiat Day had no responsibility. But remember, the indemnity agreement, which I think is a critical part of this case, the indemnity agreement obligated Chiat Day to indemnify Taco Bell when it was at fault or when it breached the agency agreement. Now, Taco Bell, in paragraph 7-2, I just referred to 7-1, Taco Bell had an obligation, if there were a claim, to indemnify Chiat Day when it were at fault. And the language is very clear, except to the extent the damages were caused by Chiat Day. So the intent of the parties was clearly to create a scheme of proportional indemnification. And so the only basis for not assessing liability against Chiat Day would be if there were the absence of any evidence of Chiat Day's fault, which is clearly not in the record.  I didn't finish, but in failing to exercise its best judgment, Chiat Day violated its own internal policies, didn't return the box, lost or destroyed the contents. It may or may not have contained storyboard ideas and a lot of other things, all of which became compelling when the wrench jury heard that. Then Chiat Day, which had an obligation to do copy clearance, whenever the first idea was created, failed in its duty to do a trademark or copyright search. Now, it is a fact that those claims were not, did not survive to trial in the underlying Michigan wrench case. But the fact is, their own outside counsel, who was supposed to get these sort of solicitations and who did not of this material, testified under oath in this case that had they done what they should have done, which was a copy clearance search, and had he seen there was a trademark, it would have raised a red flag. Chiat Day also, in exercising its best judgment, remember that in January of 88, Wrench filed its lawsuit. At that time, the parties entered into a joint defense agreement, Chiat Day and Taco Bell. At that point in time, Chiat Day was fully aware of the potential of there being a claim. Now, Taco Bell's perspective, this was an implied contract. Taco Bell then and now, even though they suffered a $30 million liability, didn't have this, wasn't keeping anything from Chiat Day in the sense that they had entered into a contract. This was an implied contract that a jury, with hindsight, determined that based upon the fact that the jury found a similarity between the ideas, characters, concepts and images created by Chiat Day and Taco Bell, that there was a basis for imposing liability for Taco Bell. Taco Bell, the client, having used it. Since you're running out of time, I have a question about issue preclusion. Yes. How are Taco Bell and T.B.W.A. in privity? In the following way. So that's a very good question. I think the fact that in January of 1998, Chiat Day entered into a joint defense agreement. Now, they weren't named as a party, obviously, in the case. They entered into a joint defense agreement with Taco Bell. They were both represented by the Chicago law firm of Sidley and Austin. The joint defense agreement is in the record. It states that they have a mutuality of interest in a common defense. It states that both parties would preserve any subsequent indemnity rights. So they weren't going to sue each other at that point in time, where Taco Bell wasn't going to bring that indemnity action. And very importantly, I think this is a very important fact in the record that the court didn't focus on, the joint defense agreement provided that if one of the parties felt there were a conflict of interest, they could withdraw from that agreement, break the privity chain. And Chiat Day, for five years, from 1998, frankly, until the verdict came in. That's when Chiat Day first started talking about conflict of interest or not being in privity when this lawsuit was filed. During the entire time the Wrench litigation was pending, Chiat Day at no point in time raised the issue of a conflict of interest. Not once. And so we believe, and we cited the case law, but we believe that as a result of the joint defense agreement and engagement letter, as a result of the common interest in the defense of that case, that Chiat Day was, in fact, in privity with Taco Bell. And the law in both Michigan, California, or federal law, depending on how the court would view the Semtec decision, is the same. That it doesn't have to be a party. There just has to be a closeness. It has to have a full and fair opportunity to litigate. And they did. They were party to the agreement. They were represented by the same counsel. Their witnesses testified at trial. And, by the way, it was their witnesses, Bennett and Williams, who were former employees at the time, who Taco Bell relied upon, who were not believed. And it is the identical issue in that case that creates liability in this case. I would. So thank you. And I want to apologize. I knocked my water out. So when you put down your papers, that was not a Chicago tactic to ruin your presentation. Do you need a clerk to wipe it up? It's actually covered in water. There will be a cleanup charge. I thought before you put his papers down, are you going to need some water for yourself? No, I'll stay away from the water. May it please the Court. My name is Paul Cochran. I represent TBWA on this appeal. The problem with Taco Bell's appeal is that it ignores the record in this case. It also ignores the fact that this is an appeal from a summary judgment grant. And that record is very important. The issue before this appellate court should be, did Taco Bell present evidence to the district court that would show there was a triable issue of fact here? Taco Bell, on this cross-motion for summary judgment, was the non-moving party. Under the Celotex trilogy from the Supreme Court, they had the burden to come forward on this motion and show that there was a triable issue of fact. And they didn't. And they told the court on their motion that these are just legal issues. There are no issues of fact here. This is a case that presents legal questions as to whether or not collateral estoppel makes Chiat Day, TBWA, responsible for the underlying wrench judgment. It was Taco Bell's position that by virtue of that wrench decision, the indemnification obligations of TBWA under the agency agreement were triggered. And that TBWA was therefore at fault. Notably, Taco Bell, in moving for summary judgment and in opposing our cross-motion for summary judgment, made no effort to present any factual evidence to show that TBWA did not in fact independently create the Chihuahua dog. They relied solely upon the wrench jury verdict for that fact. Not only did they not present evidence that TBWA hadn't created the Chihuahua dog itself, but they relied upon their own admissions that TBWA had independently created. Let's assume that that's true. Would you comment on what I think is a key issue here on privity between Taco Bell and TBWA in response to the argument of opposing counsel? Privity, of course, only has to do with one aspect of what the district court found. But on the collateral estoppel issue, the court found there was no privity. Why not? Because in this case, the issue that had to be tried here, and the one which they would like to import from the wrench case, is an issue on which these parties are diametrically opposed. That is, who's at fault? According to Taco Bell, the wrench verdict determined that TBWA was at fault for not creating the Chihuahua independently, the Chihuahua character independently. They don't rely on evidence. They just claim the wrench jury verdict did that. The agency agreement made the party at fault the indemnitor. The other party not at fault was the indemnity. If both parties were at fault, then there could, in fact, be some proportioning of liability. But you're not an indemnitor in the agency agreement if the claim or liability arises out of the other party's fault. Here, the claim was that Taco Bell had breached an implied contract, not only an implied contract, but one they had not disclosed, that they had used materials that they had obtained or ideas they had obtained from wrench over a year's period, had incorporated them into the ads, and had breached the agreement. It's undisputed, and this is one of the reasons, I'll get back in a moment to the privity, but it's undisputed that Taco Bell never disclosed to Cheyenne Day, TBWA, that, in fact, it had this contractual commitment. It denied it. It denied it from 1997 to 2003. And it directed its agency to continue to produce these chihuahua ads, despite what they knew to be a contractual commitment they were denying. Taco Bell took full responsibility, therefore, for the running of these ads. Cheyenne Day, on the other hand, having independently created the chihuahua ad, a character on its own, had no reason to know there was even a risk here. They had created a dog by June 2, and they had been told by their client six months later that there was no problem with that concept and they should move forward with it. Under those circumstances, there was nothing that Cheyenne Day could do but continue to produce the commercials as they were required to by contract. Now, why are they not in privity? Because there was a provision that made identification turn on its fault. If, in fact, Taco Bell was at fault for failing to disclose a private agreement it had with a third party and for going forward and using information improperly, then under the agency agreement, TBWA had no identification obligations, even though the materials arose out of its materials it created. It's because the claim was the fault of Taco Bell. They didn't disclose that exonerated TBWA. On the other hand, if TBWA was at fault for breaching that implied contract, then it would have to identify Taco Bell at least to some extent. Because there was this conflict in the agency agreement, neither party could represent the other's interest. There's an inherent conflict. And, in fact, Mr. Harris says that there had to be some notice of this conflict. And none was given. Well, that's because he uses a provision in paragraph 7.2 to make that argument, Your Honor. He argues that under 7.23 little i there was some obligation on the part of TBWA to bring this to the attention of Taco Bell. The argument is frivolous for two reasons. Number one, the 7.2 provision is a provision that defines Taco Bell's identification obligations. It doesn't suggest that TBWA has to do anything. It's not addressing TBWA's obligations. On the other hand, 7.23 little i is only one of multiple reasons which make Taco Bell liable. The very next provision is for fault or negligence. There's no suggestion in paragraph 7.2 that TBWA has to advise them of their fault or negligence in order to be entitled to identification. They're two separate the notification provision is a safe harbor. If the agency knows there's some problem with an idea, they can bring it to the attention of the client and get it signed off on and be protected, be identified. That doesn't mean they have to assume that the client has some wrongdoing and is at fault or negligence to bring that to their attention. They're totally separate issues. Going back to the collateral estoppel for a moment, though. The district court didn't merely dismiss the claim on privity issue. More importantly, first of all, it dismissed it because you couldn't have collateral estoppel in this case because of the wrench jury charge. The court specifically went to the charge and found what Taco Bell is asking us to do here is to make TBWA responsible for that jury finding and wrench. Well, what did the jury find? They point to the jury verdict sheet, which says that the character created by Chayotte Day wasn't independently created. But the jury charge to that jury was that they had to determine whether Taco Bell and TBWA independently created that ad. And the judge told the jury to look through the exposure and access that Taco Bell and TBWA had to the wrench materials. So that jury charge simply doesn't support a finding with regard to TBWA being responsible for this at all. Yet Taco Bell wants TBWA to be found liable on that jury verdict finding alone. The court probably found that you couldn't rely upon that jury verdict because it's not definite. It leaves open to speculation what the jury found, particularly since the jury had heard all three weeks of evidence about a year of dealings between the Taco Bell officials and wrench, and not only Taco Bell officials generally. They heard three weeks of evidence that the very Taco Bell officials who selected the TBWA chihuahua later were the ones that were dealing with the issue with the wrench people. Vada Hill, Peter Waller were all being exposed to this chihuahua from Ed Alfaro before they even retained TBWA. They selected a chihuahua and didn't tell TBWA about it, and five years later said, oh, by the way, you're supposed to identify us. The very reason this agency agreement was drawn the way it was is so that wouldn't happen. The identification makes us liable for our materials, except if the liability or claim is Taco Bell's fault. Here, what else could it be? It's a breach of an implied contract that wasn't disclosed. There are no intellectual property issues, no trademark issues, no copyright issues, certainly no issues that would have been brought to anyone's attention by doing a trademark or copyright search, which is what's being suggested here. No trademark or copyright search would disclose a private contract that these two parties had between themselves, which was never disclosed to us. There are a couple of other important points to be made here, though. Mr. Harris told you, in response to Judge Thompson's question, that there was some issue of fact about whether or not TBWA independently created the Chihuahua dog by June the 2nd of 1997. It's an interesting position, but it's one that's been taken only on appeal. If you look at the record before the district court of this entire case, from the Rule 26 statement that's in the record, through the six briefs written on summary judgments across motions, through the oral argument, it was always TBWA's position that one of the reasons we should get summary judgment here is because we independently created the Chihuahua dog before this box of materials that was ever sent to TBWA. That, in fact, was Taka Bell's argument in the Wrench case, that there could be no liability because TBWA independently created before the box of materials went. That was our position in this case. Not once in the five years of litigation, from the Rule 26 statement through summary judgment, did they ever challenge that. Quite the contrary. They tell you now in the reply brief that all they ever admitted in this record was that they never had any discussions with us. But if Your Honors look to their pleadings at ER44, you'll see that they pled in their complaint that we independently created this dog in June, without any input from Taka Bell. And if you look to the notices to admit in this case that are in the record, the notices to admit at SRE 568, there are three questions that they were asked to admit in this litigation, which take this issue away from them. The first one was, Second question, And then third, And the same questions are posed in the Rule 56 statement, and you have the same admissions by Taka Bell. So when they come in here in their reply brief, and for the first time in five years tell this court that there's a question of fact about whether we independently created this dog on June 2, 1997, they're just fabricating, they're misrepresenting the record. There was no issue before the district court, in fact, all the evidence before the district court was to the contrary. So the district court is confronted with what from Taka Bell? How did they show that there was an issue of fact to be preserved at trial? They relied on collateral estoppel, which was not available to them, and they relied on their own admission that we independently created this chihuahua dog. And they argued to the district court that that fact, that we independently created the dog, establishes our liability, because it proves that Taka Bell had nothing to do with it. And since we independently created it, we must be responsible. But the fact of the matter is, Your Honors, if you look at the wrench jury charge and the wrench trial, and the findings and arguments that Taka Bell made, the issue there was a character created. It was a dog, the idea of using a dog created by Chiatte, TBWA, before this box of materials came. Wrench argued that, well, you know, it may seem that way, that's what Taka Bell wants you to believe, but we have reason to believe that this idea seeped through to TBWA in advance of that box of materials, and that the agency didn't create this idea of using a chihuahua dog on or about June 2nd. Taka Bell argued to the contrary. The issue there was, was the idea independently created? And the other misrepresentation that you'll find in the reply brief is that now suddenly, they want this court to believe that the jury who's charged there, that the character, the character means the ideas, concepts, and images, but if you look at ER 330, the charge to the jury in this case by the court and wrench was that the psycho chihuahua character means the ideas, concepts, and images, not the character, the psycho chihuahua character. And the court told the wrench jury that if you find these characters are in fact the same, they not only look alike, but they act alike, you still have to find whether or not the Taka Bell chihuahua was independently created by Taka Bell and Shia Day. The character that had to be created as a complete defense was not the ideas, concepts, and images, that was the psycho chihuahua character. The simple act of creating this idea of using a chihuahua dog before that box of materials came over was a complete defense to the wrench liability. That's what Taka Bell argued before the wrench court, that's what the charge is, and that's what they have to show here, that we didn't independently create this idea before they told us anything about the psycho chihuahua. If you will look at, and they say, well we relied upon the representations of TVWA that they independently created. The affidavits they relied upon were done in January of 1998 when this case first arose between wrench and Taka Bell. They put in affidavits from Bennett and Williams, the two creators at TVWA, and what did those affidavits say? They say, we came up with the idea of using a dog independently. Not all the commercials, not all the ideas, that was not an issue here. The complete defense was, did you create your own character? Did you come up with that idea before you knew about the psycho chihuahua character? In the wrench case, the 45 to 50 advertisements were done afterwards were not even an issue. You won't find anything in the jury charge about it. It was not a question. The question was, did TVWA come up with the character, the idea of using a chihuahua dog? And in this case, on summary judgment, they admit that we did. It's in their notices to admit, it's in their Rule 57 statement, it's in their pleadings. It's not an issue. It's not at fault. Thank you. That's passion. I think it got me back for spilling the water. I should have saved more rebuttal time. Obviously, the court has to look at the record carefully, because there are two very different views of what the record said. But I need to clear up a few things. First of all, Your Honors, we'll read the request to admit. What request to admit 35 says is not that Taco Bell admits that Shia Day independently created the character. What Taco Bell admitted was that they didn't disclose the wrench materials to Shia Day prior to June 2nd. And Your Honor and I talked about the relevance of that. That was the admission. The only time Taco Bell took the position, contrary to what counsel says, as an argument that the character had been independently created, was in the wrench case. And the reason Taco Bell took that position was because Shia Day's witnesses said that's what happened. They had independently created the character. The fact of the matter is, that's just... If your client had that information, which apparently he did, so why didn't you turn it over to... There was no information to turn over. Here's what our client had, Your Honor. Our client had a person in the name of Ed Alfaro who had been dealing with the wrench folks. Had we known that a court was later or a jury was later going to find that there was a contractual obligation, we would not have concealed that for anyone. But it's a little bit of a misnomer to suggest that there was information about the existence of a contract that we were intentionally not disclosing. We didn't believe there was a contract. We believed one of our licensing... And in June of 1997, they received that information. But we didn't believe, they're our ad agency, Your Honor, we didn't believe the idea of using a chihuahua alone was a violation of anything. Once the lawsuit was filed, we went to... We asked for their best judgment as they were required to provide to us under the agency agreement. We paid them a lot of money. We said, okay, we have... There's an employee of ours who was meeting with wrench, talking about these wrench ideas, and Shia Day said, we independently came up with this, we're not using any of this, and the jury rejected that in wrench. That's what happened. Now, as to collateral estoppel, despite what counsel says, there... And I'm not sure that the privity question was ever answered, but the identity of issues was unambiguous. Your Honors can look at the special interrogatory. It said that Shia Day did not independently create the character. Taco Bell had no responsibility for creating advertising. That's why we hired Shia Day, and if you look at the record that we provided in this action from the wrench action, Bennett and Williams testified in sworn statements and under oath at the trial that they alone, that they alone created the character. So the notion that there's an ambiguity in the special interrogatory or in the wrench jury instructions, I would submit to you, is not accurate. And I... I'm not sure that Shia Day, that your client, had been dealing with the wrench people. Come up with some character or ad theme or whatever it is that involved a Chihuahua. No, no, if I understand your question correctly. The answer is no. If you're saying, did we tell them, here, take this wrench stuff and come up with... No, no, we didn't tell them. We're talking to these wrench people about Chihuahua, about a Chihuahua ad. In June of 1997, when they got the box, they knew that we... So they got the box, but... Well, wait, if I could, can I add one thing? No, we don't know. No, no, there's an important fact that... When your client first came, when they first came to your client with, you know, we're working on this Chihuahua idea, and did your client tell them, well, we've been talking to wrench and wrenches. No, because at that point in time, in March and April and May, I mean, we admitted in the request to admit that we didn't disclose it. Why didn't your client tell them that? Because it had no relationship to the ad campaign. That's not a good answer. Well, that's the fact. I mean, that's the fact. And then in June, what we said to them was, here's the marketing material, licensing material. And Chiatay looked at it and they said, hey, that looks fine to us. And then they kept it. And then as the wrench jury found, they used it. That's what happened. And if I can raise one other issue with respect to approval and approval of the ads that I think is important. Taco Bell, as any client, approved the cost of running the ads, and they approved the running of the ads. They never approved shifting the risk away from Chiatay for its responsibility to create the ads. And in fact, to the extent that your honors find an ambiguity in the agency agreement and parole evidence is admissible, which we submitted was the case with the district court, the first draft of the ad was not. The first draft of the agency agreement, Chiatay's counsel or TBWA's counsel had language in there that would have been much more onerous and said, if a client of ours approves the ads, we're off the hook. And we said, that's not how the business works. And they agreed, and that was removed from the agreement. So there's no issue I would submit to you that approval is a bar to the indemnity action. The fact of the matter is, your honors, under both the collateral estoppel doctrine and with respect to the evidence put before the court, there are genuine issues of disputed fact about the degree of responsibility of both parties that resulted in this $30 million verdict. The fact of the matter is, Taco Bell would have suffered zero dollars in the Wrench case, even if there was an implied in fact contract, your honors, except for the fact that the Wrench jury found that their outside ad agency had used the $30 million. Whatever you call character, whenever it was defined, it really doesn't matter. They used it, and they created it. So it seems to me they bear some of the responsibility for this. All right. Time's up. Thank you very much, Your Honor. Thank you. Your Honor. All right. We're through. And we'll recess until tomorrow morning, 9 o'clock.
judges: Pregerson, Nelson, Thompson